271 N.J. Super. 311 (1994)
638 A.2d 875
LINDA B. DUNN, INDIVIDUALLY, AND AS THE ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF CAREY DUNN, PLAINTIFF,
v.
DONALD E. PRAISS, M.D. AND MARTHA BRUMBAUGH, M.D., DEFENDANTS, AND JOEL E. MARMAR, M.D. AND SOUTH JERSEY UROLOGIC ASSOC., DEFENDANTS-APPELLANTS,
v.
HEALTH CARE PLAN OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 1994.
Decided March 10, 1994.
*313 Before Judges DREIER, BROCHIN and KLEINER.
*314 Stephen M. Greenberg argued the cause for appellant (Stern & Greenberg, attorneys; Jeffrey Speiser and Howard D. Cohen, on the brief).
Richard A. Grossman argued the cause for respondent (Grossman & Kruttschnitt, attorneys; Mr. Grossman and Eli L. Eytan, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendants Dr. Joel Marmar and South Jersey Urologic Associates appeal from the dismissal of their cross-claims against Health Care Plan of New Jersey, a health maintenance organization (HCP or HMO). The cross-claims, as well as plaintiff's claims against HCP, were initially dismissed at trial on HCP's motion. Plaintiff appealed and this court reinstated plaintiff's claim. Dunn v. Praiss, 256 N.J. Super. 180, 606 A.2d 862 (App.Div.), certif. denied, 130 N.J. 20, 611 A.2d 657 (1992). Dr. Marmar and South Jersey Urologic Associates had not separately appealed from the dismissal of their cross-claims against HCP. On remand for retrial on the damage awards, the trial court held that Dr. Marmar and South Jersey Urologic Associates were barred from now asserting their cross-claims. The sole issue of this appeal is whether Dr. Marmar and his urologic group may now assert a cross-claim for contribution against the HMO. We determine that the cross-claims were neither barred nor waived. In doing so, we equate cross-claims that seek relief for acts that are proximate causes of a loss, irrespective of whether the act is a breach of a duty defined by contract or by tort law.
Plaintiff, Linda Dunn, individually and as administratrix ad prosequendum of her husband's estate, commenced this medical malpractice action after her husband's untimely death from testicular *315 cancer.[1] Initially, plaintiff named Donald Praiss, M.D., Joel Marmar, M.D., and their medical group, South Jersey Urologic Associates, as defendants. Plaintiff also named the HMO which had retained South Jersey Urologic Associates to provide services to its members, and Martha Brumbaugh, M.D., decedent's primary care physician who was an employee of HCP.
In their answer to plaintiff's complaint, Dr. Marmar, his partner, Dr. Praiss, and South Jersey Urologic Associates denied liability to the plaintiff and asserted cross-claims for contribution and indemnification against the HMO. Specifically, Dr. Marmar, Dr. Praiss and South Jersey Urologic Associates claimed that HCP was liable under the New Jersey Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 et seq., and the New Jersey Comparative Negligence Law, N.J.S.A. 2A:15-5.1 et seq., and that HCP should indemnify them based on common law principles of indemnity as well as express or implied contract. Likewise, HCP asserted cross-claims for contribution and indemnification against Dr. Marmar, Dr. Praiss and South Jersey Urologic Associates.
During trial, all claims against Dr. Praiss were dismissed under R. 4:37-2. The trial court also dismissed plaintiff's claims against Dr. Brumbaugh and HCP under R. 4:37-2(b). The order to that effect, insofar as the HMO was released, was the basis of the first appeal. Plaintiff's claims against HCP were based on theories of contract, respondeat superior, and agency. There had been claims of negligence against the HMO in plaintiff's complaint, but no independent expert proof had been offered by plaintiff on this point at trial.
After the trial court dismissed plaintiff's claims against HCP, plaintiff's counsel inquired about the status of the cross-claims against HCP. The trial judge admitted that he had not considered *316 the cross-claims. The attorney for Dr. Marmar and South Jersey Urologic Associates then stated:
I have no evidence that HCP would have done anything deemed negligent. I would not submit any evidence on that. The only thing seems to me, if counsel for the plaintiff is correct, ultimately that there was some vicarious responsibility, your Honor's comments today, they would share in that liability that we ultimately bear in this case I think takes care of that.
The trial judge cautioned HCP:
All I say, they may be bound if, you have to look at that decision in [Pappas v. Santiago, 66 N.J. 140, 329 A.2d 337 (1974)], they were invited if they want to continue in the participation of the trial where you are continuing along with the theory of damages because quite conceivably if there is an award and they have been let out and there's a tort feasor still remaining, they may be on the rug for damages, so they still have a right to participate in the trial if they want to.
HCP nevertheless declined to participate further in the trial, and the cross-claims were dismissed as a matter of law pursuant to R. 4:37-2.
The jury returned a verdict in favor of plaintiff against Dr. Marmar and South Jersey Urologic Associates and awarded damages in the amount of $2,904,240.54. The trial court denied the motion for a new trial brought by Dr. Marmar and South Jersey Urologic Associates.
In the initial appeal, plaintiff argued that her claims against HCP should not have been dismissed, and Dr. Marmar and South Jersey Urologic Associates alleged error in the limitation of their expert's testimony, as well as certain aspects of the damage awards. Dr. Marmar and South Jersey Urologic Associates did not cross-appeal from the dismissal of their cross-claims against HCP. We affirmed the liability judgment against Dr. Marmar and South Jersey Urologic Associates and found that the HMO was liable to plaintiff for the acts of Dr. Marmar on the theories of respondeat superior and agency. The damage award for decedent's pain and suffering was remanded for consideration of whether there should be a comprehensive damage trial, and the wrongful death and loss of consortium awards were reversed and *317 remanded for trial.[2]
On remand, Dr. Marmar and South Jersey Urologic Associates requested that the open cross-claims and the damage issues be tried together. HCP requested that the cross-claims be tried only after the retrial on damages. HCP also contested Dr. Marmar's and South Jersey Urologic Associates' right to a jury trial on the cross-claims. The trial court bifurcated the issues. Prior to the retrial, HCP confirmed to the trial judge that it would not participate in the retrial, but would be bound by any judgment entered. After considerable negotiation following the commencement of the retrial, a consent judgment of $2,904,160.54 was entered solely against Dr. Marmar.[3] The judgment provides that plaintiff "assigns to MARMAR any and all rights, claims, and causes of action she may have had, against HCP." At the hearing on the consent judgment, the judge stated:
I did prior to the commencement of trial speak to Mr. Grossman, who represents Health Care Plan of New Jersey. He again confirmed to me as I understand he confirmed to Judge Mariano that he did not intend to participate in this trial whatsoever. I specifically said to him you recognize and understand that your client will be bound to any judgment that is entered and he indicated in the affirmative that he did understand that to be the case. And he did further understand that in all likelihood that  not in all likelihood, almost a certainty that there would be additional proceedings between Doctors Marmar and South Jersey Urological Associates and their insurer and the HMO. That is perfectly clear.

[Emphasis added].
*318 At no time did HCP indicate that it planned to contest the validity of the cross-claims.
HCP nevertheless then moved to dismiss Dr. Marmar's and South Jersey Urologic Associates' cross-claims. The judge granted HCP's motion, ruling that the Appellate Division had implicitly affirmed the trial court's dismissal of the cross-claims. However, the court apparently agreed that HCP's cross-claims against Dr. Marmar and South Jersey Urologic Associates would still be viable in the event that they did not pay the judgment:
[Counsel for HCP]: I've learned some lessons through this litigation so I want to make sure we're all on the same wavelength. When [counsel for Dr. Marmar and South Jersey Urologic Associates] says we're all finished I would agree with that with one possible exception. If the carrier for Doctor Marmar pays the settlement then I have no pending cross-claim. I  I am assuming that what is supposed to be done will be done. If for any reason that falls through then I want to make clear that we still have a cross-claim which is I would not assert now because there's no reason to.
The Court: Um-hum.
Dr. Marmar and the urological group then asserted that its cross-claims against the HMO were still viable, having been reinstated as a matter of law when plaintiff's claims against the HMO were reversed by us in the initial appeal. They still assert that they never abandoned their claims, especially their negligence claim that would subject the HMO to contribution under the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 et seq.
The Rules of Court provide little guidance to us. Dr. Marmar's and South Jersey Urologic Associates' cross-claim for contribution against HCP was subject to an adjudication on its merits in the first trial. R. 4:37-2(c) provides:
When a claim for contribution has been asserted pursuant to R. 4:7-5, a motion for dismissal as to any defendant against whom such claim has been asserted shall be held in abeyance until the close of all the evidence, and at that time the granting of the motion shall constitute an adjudication upon the merits of the claim for contribution....[4]
*319 Although Dr. Marmar and South Jersey Urological Associates appealed from some of the trial court's rulings, they did not appeal from the dismissal of their cross-claims against HCP. HCP argues that their failure to appeal precludes them from now litigating these claims. See Mondelli v. State Farm Mut. Auto. Ins. Co., 102 N.J. 167, 506 A.2d 728 (1986); Burbridge v. Paschal, 239 N.J. Super. 139, 570 A.2d 1250 (App.Div.), certif. denied, 122 N.J. 360, 585 A.2d 369 (1990).
There is, however, a parallel line of authority that provides a basis to reinstate the cross-claims based on plaintiff's successful appeal. The Supreme Court has held that the benefits of a reversal obtained by one party can, in appropriate cases, inure to a non-appealing party. In E & K Agency, Inc. v. Van Dyke, 60 N.J. 160, 286 A.2d 706 (1972), summary judgment was granted in favor of plaintiff as against two defendants. One defendant appealed and obtained a reversal. The Supreme Court held that the reversal as to the appealing defendant necessitated a reversal as to the other defendant. The Court held that "where reversal of a judgment eliminates all basis for recovery against a non-appealing party, as well as against the party who has appealed, the benefit of the judgment will be made available to all alike." Id. at 163, 286 A.2d 706. The Court based its decision on what it termed "the general function of appellate review," and found that "[i]n the exercise of its appellate jurisdiction a reviewing court has the power and indeed the duty to make such ultimate disposition of a case as justice requires." Id. at 163-164, 286 A.2d 706. The Court noted "a requirement that the ultimate disposition of a case be just, not only as to parties directly before the reviewing court but also as to others who will perforce be affected by the action of the court." Id. at 165, 286 A.2d 706. The Court then held that allowing the plaintiff to recover against the non-appealing party after the courts had found that the claim was without merit would be a "travesty of justice." Ibid; see also, Gautam v. Conte, 239 *320 N.J. Super. 362, 368, 571 A.2d 344 (App.Div. 1990); Kozinsky v. Edison Prods. Co., 222 N.J. Super. 530, 539, 537 A.2d 737 (App. Div. 1988); and Potter v. Hill, 43 N.J. Super. 361, 366, 128 A.2d 705 (App.Div. 1957). Likewise, in the present case the interests of justice mandate that the benefit of the reversal of the dismissal of HCP as to plaintiff be made available to Dr. Marmar and South Jersey Urologic Associates. It would be inequitable to reinstate plaintiff's claims against the HMO (which in turn provide a basis for an indemnification claim against Dr. Marmar) without permitting the doctor and the urologic group to show that there is a valid basis to claim contribution against HCP.
We therefore reach the merits of Dr. Marmar's and South Jersey Urologic Associates' claim that there was a viable cross-claim asserted by them at the end of the original trial. They now assert that they had advanced such a claim and that they had intended to rely upon plaintiff's proofs of the HMO's negligence or breach of contract. At this time, they assert, they have even secured their own expert and are ready to proceed to show that the HMO was independently negligent, thus subjecting HCP to a viable claim for contribution.
The record shows otherwise, at least as to the negligence claim. Plaintiff's assertions against the HMO in the original trial were principally based upon breach of contract, respondeat superior and agency. Although there were overtones of negligence, the complaint was primarily aimed at the failure of the HMO to live up to its representations set forth in its promotional material, and its control over not only its direct employees, but also the specialists it had on retainer to treat its patients.
Dr. Marmar and the urological group claim that they specifically reserved their rights concerning the negligence claims. That is not so. As quoted earlier, their attorney stated clearly for the record that he had "no evidence that HCP would have done anything deemed negligent." Their present assertion that this statement meant nothing more than a lack of independent proof, which was also explicitly stated by them at the time, is belied by *321 their attorney's initial representation that if the plaintiff was correct and there was vicarious responsibility shown, the HMO "would share in that liability that we ultimately bear in this case." This assertion was consistent with plaintiff's proofs recognized by us in the first appeal. In our initial opinion we found that the only viable claims presented by plaintiff against the HMO had been based upon the theories of contract, respondeat superior and agency. We stated:
We need not analyze the contractual theory advanced by plaintiff, since it is apparent to us that Health Care Plan of New Jersey is responsible for Dr. Marmar's actions on theories of respondeat superior or agency.

Dunn v. Praiss, supra, 256 N.J. Super. at 193, 606 A.2d 862.
We had earlier explained that there was an original allegation of negligence, Id. at 186, 606 A.2d 862, but that no viable claim had been advanced on that theory.
At oral argument before the trial judge, Dr. Marmar and the urological group characterized our statement that "[w]e need not analyze the contractual theory advanced by plaintiff," Id. at 193, 606 A.2d 862, as not reaching "the issues of whether or not there is the issue of contractual liability or their act of negligence." (Emphasis added). They have clearly engrafted the negligence allegation on what we thought had been a clear statement limited to claims based on contract.
Dr. Marmar and the urologic group next argue that their settlement was conditioned upon their right to reassert all of their original cross-claims against the HMO. It is true that at the settlement their attorney stated that "our cross-claim against the HMO remains viable.... And Your Honor's been gracious enough to indicate that you will help us in obtaining an early trial date insofar as the prosecution of that cross-claim is concerned...." As quoted earlier, the judge then reiterated the statement of the HMO's attorney that there was "almost a certainty that there would be additional proceedings between Doctors Marmar and South Jersey Urological Associates and their insurer and the HMO. That is perfectly clear."
*322 From our review of this record it appears clear to us that both by operation of law, as noted earlier, and by express reservation, Dr. Marmar and South Jersey Urologic Associates preserved their cross-claims against the HMO, but that these cross-claims solely encompassed the right to assert contribution for plaintiff's contractual claim or claims based on agency or respondeat superior. We must therefore proceed to the final question of whether such a right to proceed on a contractual claim could be a basis of a right of contribution.
Initially, it appears clear that without proof of independent negligence, and notwithstanding the HMO's liability on the basis of respondeat superior, Dr. Marmar and the urologic group have no claim against the HMO for contribution based on the Joint Tortfeasors Contribution Act, since they can prove no independent act of negligence. Dr. Marmar was the active tortfeasor and the HMO as a passive tortfeasor had a right of indemnification unless it was independently liable to plaintiff.[5]Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566, 410 A.2d 674 (1980); Mayer v. Fairlawn Jewish Center, 38 N.J. 549, 559-560, 186 A.2d 274 (1962); Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 79-80, 159 A.2d 97 (1960).
Could there then be contribution, balancing Dr. Marmar's tort responsibility and the HMO's potential contractual responsibility? There is a requirement under the Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A-1 et seq. that the defendants both be tortfeasors. N.J.S.A. 2A:53A-2. In fact, in apportioning responsibility among joint tortfeasors, a principal and an agent are considered a single tortfeasor. N.J.S.A. 2A:53A-1. While there is no New *323 Jersey case directly on point, out-of-state authority indicates that apportionment is not to be made under the Joint Tortfeasors Contribution Act between a defendant liable on a theory of contract and another liable as a tortfeasor. See Higgins Erectors & Haulers, Inc. v. E.E. Austin & Son, Inc., 714 F. Supp. 756, 759 (W.D.Pa. 1989); Coleman v. Texaco, Inc., 286 Ark. 14, 688 S.W.2d 741, 743 (1985); McKinley v. Willow Constr. Co., Inc., 693 P.2d 1023, 1026 (Colo. App. 1984); Board of Ed. of Charles County v. Plymouth Rubber Co., 82 Md. App. 9, 569 A.2d 1288, 1298, cert. denied, 320 Md. 505, 578 A.2d 778 (1990); Holland v. Edgerton, 85 N.C. App. 567, 355 S.E.2d 514, 517 (1987); Cacchillo v. H. Leach Machinery Co., 111 R.I. 593, 305 A.2d 541, 542 (1973). Cf. Restatement (Second) of Torts § 886A (1977). Under the principle of these cases, the Joint Tortfeasors Act could not be a basis for the allocation of responsibility in this case.
We question the wisdom of the result reached by these cases insofar as they deny apportionment on the basis of whether the claim sounds in contract or tort. The result is vaguely reminiscent of Maitland's venerable comment that the "forms of action we have buried, but they still rule us from their graves." F. Maitland, The Forms of Action at Common Law 2 (A. Clayton & W. Whittaker, ed. 1936), quoted in United States v. Benmar Transp. & Leasing Corp., 444 U.S. 4, 6, 100 S.Ct. 16, 17, 62 L.Ed.2d 5, 8 (1979). It is true that the Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A-2, speaks solely of "tortfeasors." However, the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq. has readily been interpreted as encompassing not only "negligence," but strict liability in tort, Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 164, 406 A.2d 140 (1979), and even claims for wanton conduct, McCann v. Lester, 239 N.J. Super. 601, 609-610, 571 A.2d 1349 (App.Div. 1990); or intentional torts, Blazovic v. Andrich, 124 N.J. 90, 106-109, 112, 590 A.2d 222 (1991). Although the act apparently covers only comparative "negligence," it is interpreted as governing comparative "fault." Suter v. San Angelo Foundry & Mach. Co., supra, 81 N.J. at 162-163, 406 A.2d 140. *324 We can likewise see no reason not to apportion responsibility based upon any civil wrong, including a breach of contract, that proximately causes a personal injury. A person who is injured as a result of the breach of a defendant's contractual duty should have no less legal recourse than a person injured as a result of the breach of a general duty of reasonable care.[6]
The line between a breach of contract and a tort is often hazy. See e.g., Coyle v. Englander's, 199 N.J. Super. 212, 217-219, 488 A.2d 1083 (App.Div. 1985); Eschle v. Eastern Freight Ways, Inc., 128 N.J. Super. 299, 302-304, 319 A.2d 786 (Law Div. 1974); Prosser and Keeton on Torts, § 92 (5th ed. 1984). A breach of a contractual duty which is a proximate cause of a personal injury can easily be balanced against the negligence of another party so that their percentage responsibilities can be assessed and contribution directed as comparative fault. This is most clearly seen in contractual breach of warranty claims where the similarity to claims of negligence and strict liability has been recognized by the courts, Realmuto v. Straub Motors, Inc., 65 N.J. 336, 345, 322 A.2d 440 (1974); Collins v. Uniroyal, Inc., 126 N.J. Super. 401, 315 A.2d 30 (App.Div. 1973), aff'd, 64 N.J. 260, 262, 315 A.2d 16 (1974). In fact the Legislature in N.J.S.A. 2A:58C-1 and 2 has combined claims based upon contractual warranty, strict liability in tort and negligence in a single cause of action. We see nothing in New Jersey law that is hostile to such apportionment. In Cartel Capital Corp. v. Fireco of New Jersey, supra, the Court cited with approval a New York case under which a "manufacturer, liable under warranty, may seek contribution from a dealer who negligently repairs [an] automobile." 81 N.J. at 568, 410 A.2d 674. We therefore reject the notion that if Dr. Marmar and his urologic group at one time eschewed any tort cross-claim against the *325 HMO, but preserved their contract claims, there was no viable basis for apportioning the liability for plaintiff's injuries.
Plaintiff asserted two contract claims. Only one can result in an eventual apportionment of liability. Contract claims that do no more than show that the HMO was liable for the urologist's torts on an agency or respondeat superior basis are not a viable basis for apportionment. The HMO's liability on such a claim would immediately be subject to indemnification by Dr. Marmar or the group by reason of the passive nature of the HMO's responsibility and the active nature of Dr. Marmar's conduct. See Cartel Capital Corp. v. Fireco of New Jersey, supra, 81 N.J. at 566, 410 A.2d 674; Mayer v. Fairlawn Jewish Center, supra, 38 N.J. at 559-560, 186 A.2d 274; and Adler's Quality Bakery, Inc. v. Gaseteria, Inc., supra, 32 N.J. at 79-80, 159 A.2d 97.
It is only if the HMO's breach of the contractual duty itself is shown to be a proximate cause of plaintiff's injuries could such a breach of contract be the basis for the apportionment of the damages. For example, if the HMO breached an independent contractual duty to provide for the review of Dr. Marmar's conduct or test results, and such a review would have induced immediate treatment, HCP's failure to do so might be a basis for independent liability. As the Court stated in Cartel Capital Corp. v. Fireco of New Jersey, supra, "indemnity may not ordinarily be obtained by a party who has been at fault." 81 N.J. at 566, 410 A.2d 674. If the HMO was at fault it is entitled to no more than contribution, after the application of the comparative fault standard of N.J.S.A. 2A:15-5.1 et seq.
We cannot at this point assess all of the possibilities since the dismissal of Dr. Marmar's cross-claims prevented any inquiry into the nature of the independent proofs he wished to present on the issue of breach of contract. It is obvious, however, that these stillviable issues well might overlap or encompass some of the tort claims that were the focus of the application, but, as noted earlier, *326 were waived at the original trial.[7] Given this overlap, we can see no reason to limit the cross-claims on retrial. The parties are fully apprised of all of the claims and defenses and should not be hampered by the tort/contract dichotomy.
We therefore remand this matter to the Law Division for a determination whether there are any viable claims against the HMO which, if proven, could have been independent proximate causes of the plaintiff's injuries and death. If so, these issues should be resolved after any short period of discovery concerning possible expert testimony, to the end that the damages already agreed upon may be apportioned between the HMO on one hand and Dr. Marmar and South Jersey Urologic Associates on the other. If any of the contract claims lead only to vicarious responsibility, they may be dismissed.
Reversed and remanded for further proceedings in accordance with this opinion.
NOTES
[1] The facts giving rise to plaintiff's cause of action are set forth in detail in our initial opinion. See Dunn v. Praiss, supra, 256 N.J. Super. at 186-190, 606 A.2d 862. We will not repeat them here, except as they affect the remaining issues.
[2] HCP petitioned the Supreme Court for certification on the issue of vicarious liability. Plaintiff cross-petitioned for certification on the wrongful death and loss of consortium rulings. Dr. Marmar and South Jersey Urologic Associates did not petition for certification, but submitted a letter in opposition to plaintiff's letter brief in support of her petition for certification. The Supreme Court denied both petitions. Dunn v. Praiss, 130 N.J. 20, 611 A.2d 657 (1992).
[3] The parties seem to be under the impression that the consent judgment is for the same amount as the original jury verdict. Apparently, however, there is an $80 discrepancy from the $2,904,240.54 original judgment. The order memorializing the consent judgment mistakenly omitted South Jersey Urologic Associates. Although the amount of the consent judgment exceeds Dr. Marmar's and South Jersey Urologic Associates' policy limits, the attorney for these defendants represented that its carrier would pay the judgment.
[4] Although the rule provides that the motion for dismissal should be held in abeyance until the close of all of the evidence, the trial court apparently did not wait to rule on the motion as counsel for Dr. Marmar and South Jersey Urologic Associates indicated that there was no additional evidence to present against HCP.
[5] Dr. Marmar questions why we would have stressed the HMO's liability in our earlier opinion if we did not intend that the HMO would share ratably in a judgment. At that time there appeared to be a significant coverage question, and plaintiff may have been required to look to the HMO for payment, leaving the HMO to its remedies against Dr. Marmar, its agent, if Dr. Marmar's coverage was insufficient to pay the judgment. As noted earlier, this issue did not have to be reached.
[6] Examples of such breaches of contract might involve contracts for protective services such as burglar or fire alarms, see Port Auth. of N.Y. and N.J. v. Honeywell Protective Serv., 222 N.J. Super. 11, 535 A.2d 974 (App.Div. 1987), or bodyguard protection, in addition to the HMO's contract to provide medical services.
[7] Since that waiver, Dr. Marmar and South Jersey Urologic Associates obtained the assignment of all of plaintiff's claims against the HMO. As noted earlier, this assignment was memorialized in the consent judgment.