273 N.J. Super. 340 (1994)
641 A.2d 1112
NARNI R. GIRI, M.D., PLAINTIFF-APPELLANT,
v.
RUTGERS CASUALTY INSURANCE COMPANY, DEFENDANT/THIRD-PARTY PLAINTIFF/RESPONDENT/CROSS-APPELLANT,
v.
MEDICAL INTER-INSURANCE EXCHANGE OF NEW JERSEY, THIRD-PARTY DEFENDANT/CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 1994.
Decided May 24, 1994.
*342 Before Judges KING, HAVEY and ARNOLD M. STEIN.
Igor Sturm argued the cause for appellant (William C. MacMillan, on the brief).
Susan L. Moreinis argued the cause for respondent Rutgers Casualty Insurance Company (Ms. Moreinis, on the brief).
Robert D. Rhoad argued the cause for respondent Medical Inter-Insurance Exchange of New Jersey (Dechert Price & Rhoads, attorneys; George G. O'Brien and Mr. Rhoad, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.

I
Plaintiff, Narni R. Giri, M.D., a neurosurgeon, appeals from a judgment of dismissal in his malicious civil prosecution action against Rutgers Casualty Insurance Company (Rutgers), an automobile liability insurance carrier. Dr. Giri's suit was based on Rutgers' unsuccessful medical malpractice suit against him purportedly brought on behalf of its insured, Jean Ann Affrunti. The malpractice action, according to Dr. Giri, caused him to lose his *343 malpractice insurance temporarily and required him to close his practice for a period of time.
At the conclusion of Dr. Giri's case, the judge ruled as a matter of law that his alleged damages  lapsed malpractice insurance, interruption of his surgical practice, and consequent loss of income  did not constitute a "special grievance," a key element of his cause of action. We conclude that the judge erred and reverse.

II
On August 5, 1985 Affrunti injured her lower back in an automobile accident. On September 4, 1985 Dr. Giri performed surgery on her. Affrunti called on Rutgers to pay Dr. Giri's fee ($2,900) per the Personal Injury Protection (PIP) feature of her auto policy. Rutgers refused and also refused to pay the $10,000 hospital bill.
On May 28, 1986 Affrunti filed a complaint against Rutgers to recover her PIP benefits for Dr. Giri's surgery. On July 23, 1986 Rutgers filed an answer and a third-party complaint against Dr. Giri. In its answer Rutgers claimed an obligation to pay only "reasonable and necessary" medical expenses. Rutgers claimed, in its action against Dr. Giri, that he operated for a herniated disc at the level below the actual herniated disc. Rutgers' complaint accused Dr. Giri of "negligence, carelessness and/or recklessness" in allegedly operating at the wrong level and demanded damages for "contribution and indemnity." Rutgers also claimed that Affrunti might "in the future have to undergo surgery again to properly repair the herniated disc that was not properly operated on originally."
Nonetheless, the patient's complaints cleared up quickly post-operatively and no new surgery was required. She had no post-operative complaints or disability according to her testimony at this malicious prosecution trial in July 1992. Dr. Giri's brief on appeal tells us:

*344 The operation which Dr. Giri performed was a left L5-S1 hemilaminectomy and foraminotomy. That operation was a complete success and all of the very serious symptoms which Ms. Affrunti was experiencing prior to the surgery disappeared.
....
Due to the fact that Ms. Affrunti had a rare congenital condition whereby she had an extra vertebrae, the incision was at a level other than was intended. However, Dr. Giri was able to accomplish the decompression of the impinged nerve by removing the lamina rather than the disc.
When Dr. Giri was served with the malpractice complaint, he sent it to Medical Inter-Insurance Exchange (MIX), his malpractice carrier. MIX received the complaint on September 8, 1986. About a month later, MIX's underwriting committee voted to "non-renew" Dr. Giri's coverage "based upon chronically adverse claim experience." On November 14, 1986 MIX notified Dr. Giri that on February 1, 1987 it would not renew his policy due to expire on January 31, 1987.
Meanwhile, in November 1986 Dr. Giri had moved successfully to dismiss Rutgers' third-party malpractice complaint against him for failure to state a claim under R. 4:6-2(e). Rutgers did not appeal. On January 29, 1987 Dr. Giri sued MIX in the Chancery Division for wrongful refusal to renew his coverage and for damages. He claimed that MIX failed to comply with applicable statutory and regulatory provisions when refusing to renew him as of February 1, 1987.
On February 18, 1987 the Chancery Division judge entered an interim order reinstating Dr. Giri's medical malpractice insurance pending further action by the court. Between February 1 and February 18, 1987, Dr. Giri was not insured and was unable to practice medicine. His contracts with the six hospitals where he performed surgery required him to carry insurance. Dr. Giri claimed that stopping his mostly surgical practice and then starting up again after reinstatement caused considerable economic loss, well beyond the magnitude of simply losing eighteen days operating privileges, due to scheduling and referral considerations.
The Chancery Division judge conducted a trial on six dates between January 19 and June 14, 1988. On November 10, 1988 *345 the judge issued a written opinion holding that, because of various statutory and regulatory violations, MIX had erred in refusing to renew Dr. Giri's medical malpractice insurance on February 1, 1987. On November 30, 1988, the judge entered a permanent order reflecting this ruling. The order also transferred Dr. Giri's remaining claim for damages against MIX to the Law Division.
On December 29, 1989 Dr. Giri and MIX settled the damages claim. On January 4, 1990, having "amicably adjusted" their differences on the "remaining issues on damages," they filed a stipulation of dismissal with prejudice. This stipulation said that Dr. Giri "may make an application to the court for attorneys fees and costs." Dr. Giri made this application and, on July 13, 1990, the judge denied it. We affirmed that denial. Giri v. Medical Inter-Insurance Exchange of New Jersey, 251 N.J. Super. 148, 597 A.2d 561 (App.Div. 1991).
After the dismissal of Rutgers' third-party malpractice complaint against Dr. Giri on December 5, 1986, he filed this Law Division complaint against Rutgers for malicious civil prosecution on April 15, 1988. On June 24, 1988 Rutgers filed its answer. Recall that the Chancery Division trial of Dr. Giri's complaint against MIX began on April 18, 1988 and ended on June 14, 1988. Rutgers says it "became aware of the pendency of ... [Dr. Giri's] suit against MIX at some time during the Spring of 1989...."
On July 26, 1990 an order was entered granting Rutgers leave to file a third-party complaint against MIX. As Rutgers notes, its third-party complaint against MIX was primarily "for the purpose of establishing a credit under the doctrine of Comparative Fault" equal to the "percentage of wrongdoing attributable to the previously settling [MIX]." Rutgers wanted a jury to determine, and to quantify, a "comparison" of the alleged wrongdoing of Rutgers vis-a-vis the alleged wrongdoing of MIX, assuming that the wrongdoing of both proximately caused Dr. Giri's alleged damages resulting from MIX's temporary non-renewal of his malpractice insurance.
*346 In its third-party complaint, Rutgers asserted that, if Dr. Giri's allegations against MIX were true, "MIX's conduct was the sole proximate cause of ... [Dr. Giri's] non-renewal and the damages alleged to have been incurred" as a result of MIX's "decision to non-renew Dr. Giri's malpractice policy effective February 1, 1987." Rutgers demanded either indemnification or contribution from MIX, with regard to Dr. Giri's claim for "damages as a result of the improper non-renewal."
On January 25, 1991 an order was entered granting MIX summary judgment dismissing Rutgers' third-party complaint because MIX had "already settled" all of Dr. Giri's claims against it. The motion judge stated that the trial judge should decide if the jury, nevertheless, should be asked to determine the percentage of wrongdoing of Rutgers, if any, compared to the percentage of wrongdoing of MIX, if any.
On July 28, 29 and 30, 1992 a jury trial was conducted on Dr. Giri's malicious prosecution complaint against Rutgers. On July 30, 1992, at the close of Dr. Giri's case, Rutgers moved for dismissal under R. 4:40-1. For purposes of this motion, Dr. Giri stipulated "that the special grievance in this case is the cancellation or nonrenewal, discontinuance of [MIX's] medical malpractice insurance for ... Dr. Narni Giri and ... that this discontinuance prevented him from having admitting privileges in the hospitals ... [in which] he was operating," and "that there is no other special grievance that we can point to...." Rutgers argued that such a nonrenewal of insurance and consequent loss of income from his practice was not a special grievance.
The trial judge asked Dr. Giri's attorney whether he agreed that, if any patient treated by Dr. Giri had filed a complaint against him "on the same day as the day that Rutgers ... filed its claim against ... [Dr. Giri] alleging negligence or malpractice based on the [same] facts of this case," would the "result ... have still been the same?" In other words, regardless of whether it was Rutgers, Affrunti, "or Mrs. Joe Smith" who filed the medical malpractice complaint against Dr. Giri on August 25, 1986, would *347 MIX have "acted the same," leading to the "same result," that is, to MIX's non-renewal of Dr. Giri's medical malpractice insurance policy on February 1, 1987? Dr. Giri's attorney agreed that "any claim" for medical malpractice filed on August 25, 1986, against Dr. Giri would have "affected the insurability or renewability of Dr. Giri's policy" by MIX in the same way as had Rutgers' third-party complaint against Dr. Giri for malpractice.
For this reason, the judge concluded that there was no "special grievance from the suit filed by Rutgers" because, "[i]f a ... patient [of Dr. Giri's] had sued him at that [same] time, the same thing would have resulted ... irrespective of what occurred by the filing of this suit [by Rutgers], this action [MIX's cancellation of Dr. Giri's medical malpractice insurance] would have occurred whether the [medical malpractice] suit was brought intentionally on the part of Rutgers or the same result would have occurred if the [medical malpractice] suit was brought by a client [a patient of Dr. Giri's] at that time." Judgment for Rutgers followed because Dr. Giri had "failed to prove a special grievance."

III
Dr. Giri claims that "his temporary loss of medical malpractice insurance" and his "consequential inability to practice medicine" and resultant loss of income, which were "a direct result of the [t]hird [p]arty [c]omplaint which Rutgers had previously filed against him," constituted "a `special grievance' as required to sustain a claim for malicious prosecution." We agree.
Actions for malicious prosecution are not favored causes of action. To succeed in an action for malicious prosecution of a civil suit, the plaintiff must establish that the original suit (1) was instituted without reasonable or probable cause; (2) was motivated by malice; (3) terminated favorably to the plaintiff in the malicious prosecution action; and (4) resulted in a "special grievance" to the plaintiff. Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 151-52, 83 A.2d 246 (Ch.Div. 1951), aff'd, 9 N.J. 605, 89 A.2d 242 (1952). The absence of any one of these elements is fatal. *348 Penwag Property Co., Inc. v. Landau, 76 N.J. 595, 597-98, 388 A.2d 1265 (1978). Accord Evans v. Prudential Property & Casualty Ins. Co., 233 N.J. Super. 652, 660, 559 A.2d 888 (Law Div. 1989); Paul v. National Educational Ass'n, 189 N.J. Super. 265, 267, 459 A.2d 1213 (Law Div. 1983), aff'd, 195 N.J. Super. 426, 480 A.2d 213 (App.Div. 1984).
In Penwag, the Supreme Court observed that "special grievance consists of interference with one's liberty or property," 76 N.J. at 598, 388 A.2d 1265 (citing Mayflower Industries v. Thor Corp., supra, 15 N.J. Super. at 151-52, 83 A.2d 246.) Counsel fees and costs of defense of the malicious action are an element of damages in a successful malicious prosecution action. However, they are the routine inconveniences of litigation and "do not in themselves constitute a special grievance necessary to make out the cause of action." Ibid.
The "special grievance" element is not a requirement in a majority of jurisdictions. But Prosser tells us that "a very large minority protect the malicious litigant" unless his victim can show a special grievance, "such as interference with his person or property by reason of litigation." Prosser and Keeton on Torts § 120 at 889 (5th ed. 1984). On what constitutes a "special grievance," Prosser says that:
[E]ven the restrictive jurisdictions have recognized liability in a large group of exceptional cases in which special injury or grievance is found to exist.
The most obvious exception is that of civil actions which are recognized as quasi-criminal in character, or which involve an interference with the person, as in the case of proceedings in lunacy, contempt, bastardy, juvenile delinquency, arrest under civil process, or binding over to keep the peace. But the extension of the remedy has gone even further, and has included proceedings in which there has been interference with property or business, or damage differing in kind from the ordinary burden of defending a lawsuit, such as attachment, garnishment, replevin, the search of premises under a warrant, injunctions, proceedings in bankruptcy, or for the dissolution of a partnership. Even proceedings before an administrative agency have been held to be sufficient, where they result in similar interference, as in the case of one for the suspension of an officer, or for the revocation of a license to do business. Several jurisdictions allow an action of malicious prosecution for any civil suit initiated a second time without ground, where they do not allow it for the first.
[Id. at 890-91 (footnotes omitted).]
*349 Prosser cites Mayflower Industries, supra, as an example of an injunction which puts a litigant, at least temporarily, out of business as a "special grievance." Id. at 890 n. 18.
Mayflower Industries states that: "Plainly, an injunction which prevented Thor from conducting its business in a particular area and from using, enjoying and dealing with its property, constitutes a special grievance." Mayflower Industries, supra, 15 N.J. Super. at 152, 83 A.2d 246. Other examples from our jurisprudence include the appointment of a receiver, obtaining a writ of replevin, filing a lis pendens, or preferment of charges against a police officer which results in suspension. Id.
Dr. Giri alleges that Rutgers' malicious and unfounded lawsuit put him out of economic action for a substantial period of time, not just for the eighteen days during which he could not operate, but also for the lead and lag time as well, and cost him thousands of dollars. We conclude this was beyond the routine "damages" in the usual malpractice suit  the cost and time to defend and the possible blemish to a professional reputation. See Ackerman v. Lagano, 172 N.J. Super. 468, 412 A.2d 1054 (Law Div. 1979); Fielder Agency v. Eldan Construction Corp., 152 N.J. Super. 344, 351-53, 377 A.2d 1220 (Law Div. 1977). We also distinguish the cases finding no special grievance where the malpractice suit only caused increased insurance premiums. See Balthazar v. Dowling, 65 Ill. App.3d 824, 22 Ill.Dec. 559, 382 N.E.2d 1257 (1978); Butler v. Morgan, 590 S.W.2d 543 (Tex. Ct. App. 1979). Where the malicious lawsuit actually puts the targeted defendant out of business for a period of time, this constitutes a "special grievance," just the same as a maliciously-procured injunction.
We disagree with the trial judge's view that Dr. Giri has no "special grievance" here against Rutgers because a legitimate or well-grounded or even questionable malpractice suit would have caused him the same grief. A "special grievance" was, in fact, caused to Dr. Giri by this allegedly malicious lawsuit, if Dr. Giri is *350 right. That is enough. If the suit against Dr. Giri was instituted without reasonable cause and motivated by malice, this action is maintainable because it drove him out of business, even temporarily.
[Sections IV and V of this opinion involving an appeal from sanctions and interlocutory cross-appeals have been redacted for publication purposes. See R. 1:36-3.]

VI
Finally, we turn to Rutgers' claim that the jury should assess the comparative fault of MIX. On the first day of trial Rutgers asked that the judge permit the jury to assess the "comparative fault" of Rutgers vis-a-vis MIX with regard to the temporary loss of Dr. Giri's medical malpractice insurance which resulted in his losing substantial income. Rutgers specifically asked that the jury be permitted to assess a "percentage of fault" for Rutgers and a "percentage of fault" for MIX, assuming that the jury concluded that both were a proximate cause of Dr. Giri's loss-of-income damages. Rutgers wanted its "credit" for the percentage of fault, if any, attributable to MIX.
Because MIX had been "removed from the case by a motion for summary judgment," the judge said that MIX was "no longer a party" and, inaccurately, was "not a settling defendant in this case." The judge ruled: "[T]he statute dealing with comparative negligence talks about the comparative negligence of parties.... They're [MIX] not a party, therefore they are not going to be put on any verdict sheet with regard to liability or damages. That does not preclude you [Rutgers] from arguing proximate cause. If you can show that ... they [MIX] were the ones who proximately caused the damages that Dr. Giri suffered, that's fine and dandy, but ... they're not a party, [and] since they're not a party, I'm not going to have a jury decide their liability in this matter."
Rutgers contends that it was entitled to litigate the issue of the "comparative fault of MIX" for purposes of ascertaining Rutgers' "credit" based upon the "wrongdoing of MIX," if any. MIX *351 agrees that the judge erred in so concluding because, "[u]nder New Jersey law, juries routinely are permitted to assess the comparative fault of co-tortfeasors even though one or more of the tortfeasors has settled and is no longer a party in the case." Dr. Giri claims that "N.J.S.A. 2A:15-5.1 [the Comparative Negligence Act] is not applicable to the instant matter" because, in terminating his medical malpractice insurance, MIX violated various statutes and administrative regulations and, the non-renewal of his insurance, "though proscribed by law, did not constitute a tort." Dr. Giri says: "Although the applicability of N.J.S.A. 2A:15-5.1 has, as correctly pointed out by Rutgers, been expanded by the courts, its applicability has not been expanded to the point where it would apply to the instant matter. Although the courts have, on occasion, used the term `comparative fault' when discussing the applicability of N.J.S.A. 2A:15-5.1, it is clear from those discussions that what is actually meant is the comparative fault of various types of tortfeasors. ... Rutgers has cited no cases which stand for the proposition that the alleged fault of a nontortfeasor is subject to comparison pursuant to N.J.S.A. 2A:15-5.1."
N.J.S.A. 2A:15-5.2 does provide that, "[i]n all negligence actions," the trier of fact shall find the "percentage of negligence of each party." We recently observed that the concept of "comparative negligence" embodied in N.J.S.A. 2A:15-5.1 and -5.2 extends "beyond the field of negligence," and includes the "expanded concept of comparative fault," and said that "the labels attached by the law to various types of conduct should not thwart the principle that it is the overall fault of the parties which is to be measured." McCann v. Lester, 239 N.J. Super. 601, 609-10, 571 A.2d 1349 (App.Div. 1990). More recently, our Supreme Court said that, "[p]ursuant to the Comparative Negligence Act, the finder of fact must make an allocation of causative fault between settling and non-settling defendants so that the court can calculate the amount of the credit due the non-settler," and observed that it could "conceive of no case in which a non-settling co-defendant would not want a credit that reflects the causative fault of a defendant who had settled." Young v. Latta, 123 N.J. 584, 592, *352 596, 589 A.2d 1020 (1991). The federal Court of Appeals has observed that N.J.S.A. 2A:15-5.2 "does not on its face apply to breach of warranty actions," and that it was "aware of no New Jersey case law applying the comparative negligence statute to breach of warranty actions." In re Merritt Logan, Inc., 901 F.2d 349, 364-65 (3rd Cir.1990). But the Court of Appeals saw "no reason on this record" to disturb the jury's finding regarding "comparative fault," in which the jury found the first defendant 70% at fault "based on a breach of warranty theory," and the second defendant 30% at fault "based on a negligence theory." Ibid. "New Jersey's law on comparative negligence" notwithstanding, the Court of Appeals said that the jury's finding on comparative fault could be "applied to a damage award based on both negligence and breach of warranty theories." Ibid.
Much of this topic is crystallized in our recent opinion in Dunn v. Praiss, 271 N.J. Super. 311, 320-25, 638 A.2d 875 (App. Div. 1994). We reverse and remand on this point for reconsideration in light of that case. We conclude that apportionment of fault or misconduct is appropriate for the jury's determination if Rutgers' malicious civil prosecution, if proved to a jury, combined with MIX's either breach of contract, or breach of a regulatory duty, or both, are found to have caused Dr. Giri's damage. Of course, the basic causation issue is for the jury, as is the percentage apportionment, if both contributed.
Reversed and remanded on the appeal; reversed in part and affirmed in part on the cross-appeal.