**Yaniv HASSOUN and Computers & Electronics Warehouse, Inc. Plaintiffs,**

v.

**Lawrence CIMMINO, et al., Defendants.**

**No. CIV.A.98–5530(JAG).**

United States District Court, D. New Jersey.

Dec. 22, 2000.

Dennis A. Durkin, Durkin, & Durkin, West Caldwell, NJ, for Plaintiff.

Lori A. Dvorak, Lynch Martin, North Brunswick, Michael J. Stone, Hoagland, Longo, Moran, Dunst & Doukas, New Brunswick, NJ, for Defendants.

## OPINION

GREENAWAY, District Judge.

This matter comes before the Court on the motions of defendants Lawrence Cimmino, Florence J. Lotrowski, and the County of Middlesex, New Jersey (collectively, "Defendants" or the "Middlesex defendants") for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), and Plaintiffs' motion to amend the Complaint.[1] Plaintiffs instituted this

---

1. Two motions for judgment on the pleadings have been filed—one by Lotrowski and one by Cimmino and Middlesex County. For ease

action, pursuant to 42 U.S.C. § 1983, alleging that the Middlesex defendants deprived Plaintiffs of their constitutional rights.[2] After submitting opposition to Defendants' motions, Plaintiffs sought leave to file an Amended Complaint, which adds additional claims against Defendants, and seeks to add additional parties. For the reasons discussed below, Plaintiffs' motion is granted in part, and defendants' motions for judgment on the pleadings are granted.

### FACTS [3]

Plaintiff Computers & Electronics Warehouse, Inc. ("CEW") is a New Jersey corporation with its principal place of business in the Forrestal Village in Princeton, New Jersey. (Compl.¶ 4.) Since July of 1996, CEW has operated a retail store in the Forrestal Village that sells consumer electronic products. (Compl.¶¶ 10–11.) At the Forrestal Village location, CEW maintains a "Technical Service and Upgrade Center" to provide technical support for customers' computers. (Compl.¶ 13.) Each week, CEW closes early on Friday afternoons and all day on Saturdays for observance of the Jewish Sabbath. (Compl.¶ 12.) CEW also closes on all Jewish holidays on the Orthodox Jewish calendar. (*Id.*) Plaintiff Yaniv Hassoun is a shareholder, officer, director, and employee of CEW. (Compl.¶ 5.)

At an unspecified point in time, certain employees of Middlesex County convened a meeting with CEW employees at the offices of the Middlesex County Office of Consumer Affairs ("OCA"). (Compl.¶ 16.)[4] The meeting was called to discuss consumer service "issues." (*Id.*) Defendant Florence J. Lotrowski, Deputy County Counsel of Middlesex County, represented OCA at the meeting. CEW was represented by Terrence Oved, a non-practicing attorney. (*Id.*)

At this meeting, Lotrowski repeatedly asked Oved about the religious orientation of CEW's owners. (*Id.*) When Oved inquired as to why Lotrowski posed these questions, Lotrowski continued to press Oved for a response. (*Id.*) Following the meeting, Lotrowski telephoned CEW on several occasions, "under false pretenses," to inquire further about the identity of CEW's owners. (Compl.¶ 17.) On three occasions, she misidentified herself to Oved. (*Id.*) Oved informed Lotrowski that he would not provide information concerning CEW's proprietors absent a valid justification for such inquiries, and asked Lotrowski to stop telephoning CEW. (*Id.*)

Approximately thirty days after these telephone calls, OCA filed civil complaints in Plainsboro Municipal Court alleging that Plaintiffs here, CEW and Hassoun, violated several New Jersey consumer protection statutes and regulations. (Compl.¶¶ 20, 22.)[5] Among the charges levied against CEW and Hassoun were misleading representations, unconscionable commercial practices, and advertising without intent to sell. (Compl.¶ 22.) OCA

and clarity, unless otherwise necessary, the Court shall refer to the motions collectively.

2. This Court has jurisdiction over Plaintiffs' federal claims, pursuant to 28 U.S.C. § 1331, and over their pendent state law claims, pursuant to 28 U.S.C. § 1367(a).

3. The facts set forth here, taken from Plaintiffs' Complaint and Amended Complaint, are accepted as true for purposes of this motion.

4. As Plaintiffs seek to add OCA as a defendant in the Amended Complaint, references to the Middlesex defendants shall include OCA. OCA was created pursuant to N.J. Stat. Ann.

§ 40:23–6:47. This statute permits counties and municipalities to establish offices of consumer affairs. Although their brief in opposition to Defendants' motions references the correct statutory authority, in the proposed Amended Complaint, Plaintiffs cite N.J. Stat. Ann. § 52:17B–120 as the statutory authority under which OCA was created. The latter section is the statutory authority for the creation of the state Division of Consumer Affairs, not OCA.

5. Although the pleadings are not perfectly clear on this point, it appears that the consumer fraud actions named both CEW and Hassoun as defendants.

based its complaints on information it had received from "individuals," including representatives of manufacturers with which CEW conducted business. (Compl.¶ 22, 24.) Prior to instituting these actions, OCA did not interview Hassoun or attempt to discern whether products that were the subject of complaints had been actually purchased at CEW. (Compl.¶ 23.)

Plaintiffs contend that in connection with these proceedings, OCA issued false, incomplete, and misleading information regarding CEW to the public, to manufacturers whose products CEW sold, and to financial institutions that extended credit to CEW. (Compl.¶ 28.) Specifically, Plaintiffs state that OCA advised third parties that "hundreds" of complaints had been filed against CEW, that a proposed class action against CEW was underway, and that CEW was the "worst offender" ever known to OCA. (Compl.¶ 29.) Furthermore, Plaintiffs contend that OCA proceeded with the consumer fraud actions despite knowing that the underlying complaints were false, and that OCA concealed the fact that all of the proceedings had been resolved in Plaintiffs' favor from third parties inquiring about CEW. (Compl.¶¶ 27, 29.)

The Amended Complaint repeats the allegations of the original Complaint and proposes to add as defendants the Township of Plainsboro, New Jersey, Plainsboro Police Officer Judith Henderson, and Plainsboro Police Chief and Public Safety Director David Lyon (collectively, the "Plainsboro defendants"). As set forth more fully below, the Amended Complaint relays three incidents that transpired between the Plainsboro police and CEW following Plaintiffs' institution of this action, including one incident in which Plaintiffs contend that the Plainsboro defendants worked together with the Middlesex defendants allegedly to harass CEW.

Plaintiffs state that on November 2, 1999, a customer visited the CEW store in Plainsboro, New Jersey, and attempted to return merchandise purchased several months earlier. Upon being informed that CEW policy only permits returns through seven days after purchase, the customer called the Plainsboro Police Department. (Am.Compl.¶ 36.)

Defendant Judith Henderson, a Plainsboro police officer, responded to the call. (Am.Compl.¶ 37.) CEW had previously filed an Internal Affairs complaint against Henderson in connection with her conduct and her harassment of CEW employees. (Am.Compl.¶ 40.) Henderson questioned the customer in the center of the sales floor. (Am.Compl.¶ 37.) The manager on duty asked Henderson to interview the customer in a less trafficked area of the store. Henderson refused. (*Id.*) Although store employees advised Henderson that the dispute was a civil matter and that no criminal conduct was involved, Henderson persisted in questioning the customer. (*Id.*)

Henderson then ordered the manager to step outside. Once outside, without provocation, Henderson sprayed the manager's eyes, face, and mouth with pepper spray. Other Plainsboro police officers who had responded to the scene tackled the manager and knocked him to the ground. When other CEW employees urged the officers to give the manager water to help him breathe, Henderson and the other officers threatened to arrest anyone who intervened. The manager was then arrested and taken to the Plainsboro police station. (Am.Compl.¶ 38.) At the station, officers taunted the manager and denied him medical assistance. (Am.Compl.¶ 39.) Before the manager was transferred to the jail, Henderson handed her business card to the manager, laughing that he and the store might want to file another complaint against her. (Am.Compl.¶ 40.)

Several weeks later, on December 16, 1999, in the midst of the busy holiday shopping season, OCA inspectors arrived at the Plainsboro CEW store and demanded to inspect the store's merchandise. (Am. Compl.¶ 43.) CEW employees showed the

inspectors the merchandise, but refused to allow them to open sealed boxes and manufacturers' packaging. They explained that opening the packaging would void the manufacturers' warranties and would prevent CEW from selling the merchandise as new. The inspectors insisted that the boxes be opened, and called the Plainsboro police department. (Am.Compl.¶ 44.)

Minutes later, twelve to fourteen Plainsboro police officers arrived, surrounding the store with at least six police vehicles.[6] (Am.Compl.¶ 45.) The officers entered the store and threatened to arrest any employee who refused to allow the inspectors to proceed as they had requested. (Am. Compl.¶ 45, 47.) While in the store, the Plainsboro police officers blocked the entrances, threatened employees, frightened and intimidated customers, and turned away stock shipments arriving from suppliers. (Am.Compl.¶ 46.)

CEW employees were forced to open sealed boxes of computer products. (Am. Compl ¶ 47.) The police officers and OCA inspectors taunted CEW employees, daring them to attempt to sell the unsealed goods as new. (Am.Compl.¶ 48.) Although the incident lasted several hours and numerous police officers were present, no police report was generated concerning the incident. (Am. Compl. ¶ 49, 50.)

Many months later, on May 23, 2000, a customer arrived at the Plainsboro CEW store seeking to return an item, claiming that he had purchased it at CEW a week earlier. CEW employees inspected the product and determined that it was missing certain serial numbers that would indicate whether the item had been purchased at CEW. When the manager refused to accept the item for return and informed the customer that he suspected fraud, the customer showed a store employee a Plainsboro Police Department business card, stated that he was "friends" with the Plainsboro Police, and suggested that the

store do what he asked. The manager refused. (Am.Compl.¶ 51, 52.)

The customer left the store and returned less than a half hour later with two Plainsboro police officers, while a third officer waited outside. The officers demanded that the store accept the item "for exchange." When the employees refused, the officers demanded that they be permitted to compare the customer's item with a new item. The CEW employees felt compelled to comply. (Am. Compl. ¶ 53.) Upon inspection, it became apparent that the item sought to be returned had been tampered with, and the officers did not pursue the matter further. (Am. Compl.¶ 54.) As the police were departing, CEW employees requested a copy of the police report. They were told that there would be no report. When the employees queried about filing fraud charges against the customer, the police scoffed and left the store. (*Id.*)

### I. *Governing Standards*

#### A. *Motion to Amend*

After opposing Defendants' motions for judgment on the pleadings, Plaintiffs filed the present motion seeking leave to amend the complaint, pursuant to Federal Rule of Civil Procedure 15(a). The proposed Amended Complaint leaves intact all of Plaintiffs' original allegations against the Middlesex defendants and seeks to add a federal claim of "discrimination under color of law" (Count Five), and claims under state law for conspiracy (Count Six) and intentional infliction of emotional distress (Count Nine) against them. The proposed Amended Complaint also sets forth a § 1983 claim and state law claims for conspiracy and intentional infliction of emotional distress against the Plainsboro defendants.

Although styled as a motion to amend the Complaint, the bulk of Plaintiffs' proposed amendments concerns acts that oc-

---

**6.** Plaintiffs allege that the Plainsboro police had previously been advised of the "plan" and

were "mobilized and waiting." (Am. Compl.¶ 44.)

curred subsequent to the filing of the initial Complaint. As such, Plaintiffs' motion to incorporate those claims into this matter should have been brought as a motion to supplement the Complaint under Federal Rule of Civil Procedure 15(d). Rule 15(d) provides, in pertinent part: "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." The proposed new allegations that concern events that preceded the filing of the original Complaint in this matter were properly put forth in a Rule 15(a) motion to amend [7]

Although similar, the standards governing the two subsections of Rule 15 are not identical. Therefore, this Court will treat Plaintiffs' proposed allegations related to events that preceded the filing of the initial complaint—proposed Count Five, ¶ 76(a) of proposed Count Six, and proposed Count Nine, insofar as it concerns the Middlesex defendants—as a motion to amend under Rule 15(a). Plaintiffs' proposed allegations concerning the Plainsboro defendants (and any alleged conspiracy among Plainsboro defendants and Middlesex defendants subsequent to the filing of this action in December 1998) will be evaluated under the standards governing proposed supplemental pleadings under Rule 15(d).

■ Federal Rule of Civil Procedure 15(a) instructs that leave to amend "shall be freely given when justice so requires." The Middlesex defendants contend, however, that amendment would be futile in this case because Plaintiffs' proposed amendments fail to state a claim or are made in bad faith. In assessing Defendants' argument that the proposed amendments would be futile, the Court applies the same standard of legal sufficiency as it would under Rule 12(b)(6) or 12(c). *See In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1434 (3d Cir.1997) (" 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."). [The Court will therefore grant the amendment, and shall consider below whether Plaintiffs have stated a claim on the original and new counts against the Middlesex defendants.]

■ Although Rule 15(d) does not include the same express mandate as Rule 15(a), courts construe it to require a similarly liberal approach. *See Thomas v. Ford Motor Co.,* 111 F.Supp.2d 529, 532 (D.N.J.2000). *But see Nanavati v. Burdette Tomlin Memorial Hosp.,* 645 F.Supp. 1217, 1247 (D.N.J.1986) (noting that Rule 15(d) "does not so freely permit the amendment [of] pleadings" as does Rule 15(a)). Rule 15(d) serves judicial economy, avoids multiplicity of litigation, and promotes "as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed." *Glenside West Corp. v. Exxon Co., U.S.A.,* 761 F.Supp. 1118, 1134 (D.N.J. 1991) (citations omitted); *see also Planned Parenthood of Southern Arizona v. Neely,* 130 F.3d 400, 402 (9th Cir.1997); 6A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 1506 (2d ed.1990).

■ The decision of whether to permit a supplemental pleading is within this Court's discretion. *See Owens–Illinois, Inc. v. Lake Shore Land Co.,* 610 F.2d 1185, 1188–89 (3d Cir.1979); *see also Burns v. Exxon Corp.,* 158 F.3d 336, 344 (5th Cir.1998) (holding that district court did not abuse its discretion in denying

---

**7.** The mislabeling as a motion to amend as what is properly a motion to supplement is of little consequence. Courts commonly address improperly designated motions under the proper provision of Rule 15, and on occasion ignore the distinction between the two subsections. *See generally* 6A Charles Alan Wright, *et al.,* Federal Practice and Procedure § 1506 (2d ed.1990).

leave to file supplemental complaint). Leave to file a supplemental complaint should be freely permitted in the absence of undue delay, bad faith, dilatory tactics, undue prejudice to defendants, or futility, and when the supplemental facts are connected to the original pleading. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 66 (2d Cir.1995).

### B. *Federal Rule of Civil Procedure 12(c)*

As Defendants have answered the Complaint, they properly have brought their motions to dismiss as motions for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). Motions to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), must be made before further pleading if further pleading is permitted; that is, they must be brought before, and in lieu of, filing Answers. By contrast, a Rule 12(c) motion may be made "[a]fter the pleadings are closed but within such time as not to delay the trial ...." Fed. R.Civ.P. 12(c). A "defense of failure to state a claim upon which relief can be granted [to be made] by motion for judgment on the pleadings...." Fed.R.Civ.P. 12(h)(2).

■ The difference between Rules 12(b)(6) and 12(c) is purely procedural, however, as 12(c) requests for dismissal are governed by the same standards as 12(b)(6) motions. *See Turbe v. Government of the Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991). Accordingly, this Court must accept all of Plaintiffs' allegations as true and "draw all reasonable factual inferences in favor of the Plaintiff[s]." *Id.* Defendants' motions may only be granted if Plaintiffs are not entitled to any relief "under any set of facts that could be proved." *Id.*

As noted above, plaintiffs' proposed Amended Complaint reasserts, without alteration, the claims put forth in the original complaint. Thus, the Court shall address the sufficiency of those claims—Counts One, Two, Three, Seven, and Eight of the Amended Complaint—under the standard for judgment on the pleadings of Rule 12(c). The new claims, Counts Four, Five, Six, and Nine, shall be addressed under the appropriate Rule 15 standard.

## II. *42 U.S.C. § 1983*

■ Plaintiffs contend that the Middlesex defendants are liable for damages under 42 U.S.C. § 1983. A viable § 1983 claim contains two specific components: (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived the Plaintiff of rights, privileges, or immunities secured by the laws or Constitution of the United States. *See West v. Atkins,* 487 U.S. 42, 48–49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Shaw v. Strackhouse,* 920 F.2d 1135, 1141–42 (3d Cir.1990). Section 1983 does not confer substantive rights, but provides a remedy for the deprivation of rights protected by federal law. *Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *see also Sameric Corp. of Delaware, Inc. v. City of Philadelphia,* 142 F.3d 582, 590 (3d Cir. 1998).

### A. *Count One: 42 U.S.C. § 1983*

■ In Count One, Plaintiffs allege that Lotrowski acted "wrongfully, maliciously, illegally, arbitrarily, capriciously and unconstitutionally" in instituting, pursuing, and overseeing the consumer fraud proceedings described in the Amended Complaint. (Am.Compl.¶ 60.) Plaintiffs allege that Cimmino "improperly" supervised Lotrowski during this time. (Am. Compl.¶ 61.) [8] These actions, Plaintiffs al-

---

**8.** Plaintiffs contend that Defendant Cimmino negligently supervised Lotrowski. The Supreme Court has made clear that negligent conduct does not violate the Due Process Clause and that § 1983 due process claims may not be premised on a negligence theory. *See Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see*

lege, "deprived [them] of property rights vested in them pursuant to the Fourteenth Amendment to the United States Constitution without due process of law." (Am. Compl.¶ 62.)

Put differently, Plaintiffs contend that Lotrowski pursued the consumer fraud actions for improper reasons and in an improper manner, and in so doing, deprived Plaintiffs of business opportunities and existing business, and caused Plaintiffs to make substantial expenditures in defending the actions. Although not expressly denominated as such, upon close examination, Plaintiffs' claim is indistinguishable from a § 1983 "malicious prosecution" · or "malicious use of process" claim.[9] The federal right of which Plaintiffs contend they were deprived—necessary to invoke § 1983—is a "liberty and property interest in being free from baseless civil litigation which is instituted without probable cause by a state actor and with the intention of extorting money from Plaintiffs." Pls.' Br. in Opp. to Motion to Dismiss at 12.[10] At oral argument, Plaintiffs' counsel confirmed the Court's reading of Count One.[11]

Count One is thus a § 1983 malicious use of process claim that argues that Defendants' malicious acts in instituting civil consumer fraud actions violated Plaintiffs'

rights protected under the substantive component of the due process clause. Such a claim cannot stand.

In *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the Supreme Court restricted the circumstances under which a Plaintiff may bring a § 1983 claim for malicious prosecution. Prior to *Albright*, the Third Circuit permitted § 1983 malicious prosecution claims that simply alleged the elements of the common law tort. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir.2000) (discussing pre-*Albright* standard); *Gallo v. City of Philadelphia*, 161 F.3d 217, 221 (3d Cir.1998) (same). The prior rule rested on a rationale that "by proving a violation of the common law tort, a Plaintiff proved a violation of substantive due process that could form the basis for a section 1983 suit." *Id.*

*Albright* was a § 1983 action contending that a police officer deprived the petitioner of his substantive due process right "to be free from criminal prosecution except upon probable cause." 510 U.S. at 269, 114 S.Ct. 807. First, the *Albright* plurality declined to find a substantive due process right in being free from prosecution without probable cause. *Id.* at 268, 114 S.Ct. 807. Then, noting the diversity

---

also *Berg v. County of Allegheny*, 219 F.3d 261, 274 (3d Cir.2000) ("Negligence by public officials is not actionable as a due process violation.") (citing *Daniels*). Thus, even if Plaintiffs prove all of the allegations to support their due process claims, they will not state a claim against Cimmino. Judgment is granted on Counts I and II in favor of Cimmino.

9. The term "malicious prosecution" is reserved for claims alleging wrongful initiation of criminal proceedings. When a party seeks redress for the wrongful commencement of civil proceedings, as is the case here, the tort is properly denominated as "malicious use of process." *See LoBiondo v. Schwartz*, 323 N.J.Super. 391, 423 n. 12, 733 A.2d 516 (App. Div.1999); *see also McArdle v. Tronetti*, 961 F.2d 1083, 1088 (3d Cir.1992) (making same distinction and discussing elements of malicious use of process under Pennsylvania law).

10. Plaintiffs' mention of "extortion" is apparently a reference to attempts to settle the consumer actions. The Amended Complaint makes no reference to such efforts and the Court shall not consider that portion of Plaintiffs' argument.

11. Plaintiffs' argument that they have a right to be free from discrimination by state actors is addressed in their § 1983 equal protection claim for discrimination under state law, Count Five in the Amended Complaint. The allegations in Count One speak specifically to the deprivation of "property" and "liberty"— namely, foregoing existing and future business opportunities and monies expended defending baseless consumer suits, which Plaintiffs argue are protected by the substantive component of the Due Process Clause.

of opinion among the Courts of Appeal on the extent to which malicious prosecution claims are cognizable under § 1983, *Albright* held that "substantive due process may not furnish the constitutional peg on which to hang such a 'tort.'" *Id.* at 270 n. 4, 114 S.Ct. 807. It suggested that the Fourth Amendment was the proper source for such a claim. *Id.* at 270, 114 S.Ct. 807. Thus, simply alleging the elements of the common law tort of malicious prosecution is not enough to sustain a § 1983 claim. Instead, such a cause of action must rest on an alleged violation of a constitutional amendment that "'provides an explicit textual source of constitutional protection' against a particular sort of government behavior," and not on a "generalized notion of 'substantive due process....'" *Id.* at 273, 114 S.Ct. 807.[12]

■ In its most recent interpretation of the metes and bounds of § 1983 malicious prosecution liability in the wake of *Albright*, the Third Circuit held that "a sec-

tion 1983 malicious prosecution claim could be based on a constitutional provision other than the Fourth Amendment, including the procedural component of the Due Process Clause, so long as it was not based on substantive due process." *Merkle*, 211 F.3d at 792.[13] In Count One, however, the sole right Plaintiffs claim was violated is their right to substantive due process—they do not invoke another constitutional amendment.[14] Accordingly, as Plaintiffs' § 1983 claim rests on an allegation that Defendants' alleged malicious prosecution of consumer fraud actions deprived Plaintiffs of substantive due process, it cannot be sustained. Defendant's motion for judgment on Count One, pursuant to Fed. R.Civ.P. 12(c), is granted.

**B.** *Count Two: Fourteenth Amendment Violation Property Damage*

Count Two, entitled "Fourteenth Amendment Violation Property Damage," is virtually indistinguishable from Count

**12.** Prior to *Albright*, in the Third Circuit, the same standard governed § 1983 suits for malicious use of civil process as those for malicious prosecution. *See McArdle v. Tronetti*, 961 F.2d 1083, 1088 (3d Cir.1992). There is thus no reason to assume that *Albright*'s changes to the § 1983 landscape somehow do not also apply to Plaintiffs' malicious use of process § 1983 claims.

**13.** It is important to note that the petitioner in *Albright* had been incarcerated and released on bail pending trial, *i.e.*, he had been subjected to a seizure. It was not until a pretrial hearing that the charges against him were dropped. In holding that his malicious prosecution claim did not implicate substantive due process, the *Albright* plurality indicated that his claim may have implicated his Fourth Amendment rights. *See Albright*, 510 U.S. at 271, 114 S.Ct. 807. As noted above, the Third Circuit has since held that the Fourth Amendment is not the *only* right that must be at issue in order to state a § 1983 malicious prosecution claim. That notwithstanding, where, for example, a party alleges under § 1983 that a malicious prosecution violated his procedural due process rights, courts have held that some sort of a seizure must also have been involved. *See, e.g., Palma v. Atlantic County*, 53 F.Supp.2d 743, 759 (D.N.J.1999) (holding that "to state a post-

conviction claim for malicious prosecution, a Plaintiff must allege that he or she was deprived of liberty as a result of an unlawful seizure, i.e., a seizure without probable cause"). These cases raise the question of whether a § 1983 claim for malicious use of civil process may be sustained at all in the wake of *Albright*—a question this Court need not resolve as it is clear that Plaintiffs' claims fail even if civil claims remain viable.

**14.** Plaintiffs do not base their claim in procedural due process. The "fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" *Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Plaintiffs do not allege that they were denied an opportunity to be heard or that they were found to have violated New Jersey statutes without a hearing. Although the Third Circuit has once noted that "[a]n abuse of process is by definition a denial of procedural due process," *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir.1977), the subsequent Supreme Court and Third Circuit authority discussed above makes clear that such a denial alone is not enough to state a malicious use of process claim under § 1983.

One. It appears on the surface that Plaintiffs are attempting to plead the same cause of action alleged in Count One directly under the Fourteenth Amendment, as opposed to seeking redress for alleged due process violations via § 1983. In the introduction to both the Complaint and the Amended Complaint, however, Plaintiffs make clear that Count Two is brought under § 1983. (Compl. ¶ 2; Am. Compl. ¶ 2.)

Neither the Supreme Court nor the Third Circuit has definitively spoken on whether a cause of action may be asserted directly under the Fourteenth Amendment. *See Rogin v. Bensalem Township,* 616 F.2d 680, 686 (3d Cir.1980) ("There is no occasion to decide, in the present case, whether the Fourteenth Amendment authorizes a direct cause of action for damages, however, because [Plaintiff] has alleged causes of action under § 1983 that are premised on its constitutional claims.") (footnote omitted).

 When a Plaintiff states a claim under § 1983 and also alleges an identical violation directly under the Fourteenth Amendment, the direct constitutional claim should be dismissed. *See Rogin,* 616 F.2d at 686–87. *Rogin* expressly left unresolved "the issue whether a direct cause of action under the Fourteenth Amendment would be available in the absence of an effective statutory remedy." *Id.* at 687 n. 27; *see also Mahone v. Waddle,* 564 F.2d 1018, 1024 (3d Cir.1977) (declining to infer direct cause of action under Fourteenth Amendment where one was stated under 42 U.S.C. § 1981).

Although Plaintiffs have failed to state a claim under § 1983, the Court is not convinced that § 1983 is an "ineffective" statutory remedy. Had Plaintiffs asserted a cognizable constitutional violation, they would be able to pursue claims under § 1983. In this Court's view an "ineffective" statutory remedy would exist when the alleged wrongdoer cannot be held ac-

countable under the statute. For example, until the Supreme Court decided *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), municipalities were not considered "persons" subject to § 1983 liability. Thus, prior to *Monell,* § 1983 might have been an ineffective statutory remedy against municipal wrongdoers, forcing parties to seek redress for due process violations directly under the Fourteenth Amendment.

If judgment in Defendants' favor on Plaintiffs' § 1983 claim, pursuant to 12(c), would preclude this Court from dismissing the Fourteenth Amendment claim as redundant under *Rogin,* the Court would then face the "difficult constitutional question whether to imply a fourteenth amendment remedy in damages...." *Gagliardi v. Flint,* 564 F.2d 112, 116 (3d Cir.1977). In that regard, the Court notes the "fundamental and longstanding principle of judicial restraint [that] requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988); *see also Powell v. Ridge,* 189 F.3d 387, 402–03 (3d Cir.), *cert. denied,* 528 U.S. 1046, 120 S.Ct. 579, 145 L.Ed.2d 482 (1999) (noting "prudential imperative not to resolve a constitutional issue unnecessarily"). Because Plaintiffs have stated that Count Two is brought pursuant to § 1983, the Court should not reach the issue.

 Moreover, even were a direct cause of action for damages available under the Fourteenth Amendment, Plaintiffs here have failed to allege a violation by the Middlesex defendants of an interest afforded substantive due process protection. Substantive due process is only implicated by deprivation of a "particular quality of property interest." *Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118, 123 (3d Cir.2000) (citation omitted).[15] "[W]hether

---

**15.** The Third Circuit has noted aptly that

"[s]ubstantive due process 'is an area of the

a certain property interest embodies this 'particular quality' ... depends on whether that interest is 'fundamental' under the United States Constitution." *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 140 (3d Cir.2000)

The Supreme Court has been "reluctant to expand the concept of substantive due process." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Significantly, the *Albright* Court expressly refused to find that a substantive due process right exists in being free from criminal prosecution without probable cause. *Albright*, 510 U.S. at 268, 114 S.Ct. 807. Freedoms recognized to warrant substantive due process protection include fundamental rights such as the rights to marry, to reproduce, and to bodily integrity. *See Glucksberg*, 521 U.S. at 720, 117 S.Ct. 2258. Plaintiffs' claim of a "fundamental" right to be free from baseless civil litigation stands in stark contrast to the rights the Supreme Court has recognized. *Cf. Albright*, 510 U.S. at 272, 114 S.Ct. 807 ("Petitioner's claim to be free from prosecution except on the basis of probable cause is markedly different from those recognized in [Supreme Court precedent].").

The only precedent Plaintiffs offer to suggest the existence of such a right is hardly controlling—a decision by an intermediate appellate court of the state of Tennessee. *See* Pls.' Br. in Opp'n to Mot. at 12 (citing *Clark v. Metropolitan Government of Nashville and Davidson County*, 827 S.W.2d 312 (Tenn.Ct.App.1991)). To extend substantive due process as Plaintiffs seek would flout the "Supreme Court's admonition that we should exercise

'utmost care whenever we are asked to break new ground in this field.' " *Nicholas*, 227 F.3d at 141 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 124, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). The Court declines to do so.[16] Count Two therefore does not state a claim that would entitle Plaintiffs to relief, and Defendants' motions for judgment on this Count are granted.

### C. *Discrimination Under Color of Law*

Count Five:

The Equal Protection Clause requires that similarly situated individuals be treated in the same manner. *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 423 (3d Cir.2000) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). In Count Five, Plaintiffs assert a claim under § 1983 for a violation of the Equal Protection Clause, arguing that the Middlesex defendants discriminated against them on the basis of their religion. Specifically, Plaintiffs argue that the Middlesex defendants selectively prosecuted the civil consumer fraud complaints because Hassoun and other CEW employees were Orthodox Jews.

### 1. *Lotrowski and Cimmino are Sued in their Official Capacities*

■■■ Defendants Lotrowski and Cimmino lodge extensive arguments that they are entitled to either absolute or qualified immunity for their actions in connection with the consumer fraud actions. It is

law famous for its controversy, and not known for its simplicity,' " *Woodwind Estates*, 205 F.3d at 122 (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir. 1995)), and also "lamented" the lack of "guidance as to what constitutes this 'certain quality' of property interest worthy of protection under the substantive due process clause." *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 140 (3d Cir.2000) (citation omitted).

**16.** In *Nicholas*, the Third Circuit surveyed its substantive due process jurisprudence and explained that it had recognized substantive due process protection in cases involving real property ownership, and was "reluctant to extend substantive due process protection to other, less fundamental property interests." *Nicholas*, 227 F.3d at 141. It is clear then, that to the extent Plaintiffs allege that Defendants' actions deprived them of business "opportunities," they have not stated a protected right or interest.

clear from the Amended Complaint, however, that they are sued in their official capacity. "Official-capacity suits, ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. Dep't of Social Servs. of New York,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *see also Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). The Supreme Court has held that personal immunity defenses, such as absolute prosecutorial immunity and qualified immunity as invoked here, are unavailable to defendants in § 1983 official-capacity actions. *Graham,* 473 U.S. at 166–67, 105 S.Ct. 3099; *see also Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr,* 518 U.S. 668, 677 n. *, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996) ("immunity from suit under § 1983 extends to public servants only in their individual capacities"). The "only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Hafer,* 502 U.S. at 25, 112 S.Ct. 358.[17]

### 2. *"Policy or Custom"*

 To state a claim against Middlesex County—directly or through a suit against its agencies or its officers in their official capacities—Plaintiffs must allege "that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Berg v. County of Allegheny,* 219 F.3d 261, 276 (3d Cir.2000) (quoting *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). Plaintiffs must allege that the County maintained, or acted consistently with, a municipal policy or custom, which caused a deprivation of a constitutional right. *See Doby v. DeCrescenzo,* 171 F.3d 858, 867 (3d Cir.1999); *see generally Sameric Corp.*

*of Delaware v. City of Philadelphia,* 142 F.3d 582, 590 n. 7 (3d Cir.1998).

In *Monell v. Department of Social Services of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that local governing bodies can be sued for monetary or equitable relief under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S.Ct. 2018.

The rule of *Monell* arose in the vicarious liability context and in connection with the Court's refusal to permit municipal § 1983 liability under a respondent superior theory for injuries inflicted solely by municipal employees. *See Monell,* 436 U.S. at 694, 98 S.Ct. 2018. "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The requirement thus ensures that a municipality is only subject to liability caused by its own acts; conversely, it prevents municipalities from avoiding liability when they have acted in a manner that gave rise to an injury.

 A municipal defendant need not, however, promulgate an official legislative policy or follow a repeated practice to face liability.

Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.' Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by

17. Thus, the Court need not resolve the parties' dispute over whether absolute prosecutorial immunity, firmly established in the criminal context, extends to prosecutors who institute civil consumer fraud proceedings.

law, is so well-settled and permanent as virtually to constitute law.

*Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990) (citations omitted). In *Pembaur,* the Supreme Court held that a municipality may be liable under § 1983 for "action tailored to a particular situation and not intended to control decisions in later situations." 475 U.S. at 481, 106 S.Ct. 1292. The policy or custom requirement may thus be satisfied by a single official act by a local governmental body, or official with final decisionmaking authority, such as OCA's or Lotrowski's decision to institute consumer fraud proceedings against Plaintiffs here.

It cannot reasonably be disputed that the official investigation of consumer complaints and the subsequent filing, on the part of an agency, of litigation in connection with the complaints, are official acts of both OCA and Middlesex County.[18] Drawing reasonable inferences from the Complaint, as the Court must, the Court finds that Plaintiffs have alleged sufficiently an official policy or custom of Middlesex County, as defined by *Pembaur, Monell,* and their progeny.

### 3. *Selective Prosecution*

■■■ Although broad, the government's discretion in deciding whom to prosecute is not unlimited. *See Government of the Virgin Islands v. Harrigan,* 791 F.2d 34, 35–36 (3d Cir.1986). "A decision to prosecute is selective and violates the right to equal protection when it is made on a discriminatory basis with an improper motive." *United States v. Schoolcraft,* 879 F.2d 64, 68 (3d Cir.1989); *see also Holder v. City of Allentown,* 987 F.2d 188, 197 (3d Cir.1993) ("Public officials engage in unconstitutional discrimina-

tory [conduct] when they seek to enforce the law 'on the basis of an unjustifiable standard, such as race, or religion ....' ") (quoting *Schoolcraft,* 879 F.2d at 68).[19] Section 1983 is an appropriate tool for parties claiming that selective prosecution violated their rights to equal protection. *See, e.g., Gardenhire v. Schubert,* 205 F.3d 303, 319 (6th Cir.2000); *see also Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293 (3d Cir.1997) (discussing § 1983 equal protection claim for sex discrimination).

■■■ To state a selective prosecution claim, Plaintiffs must allege two factors. First, they must allege that similarly situated persons have not been prosecuted. Second, they must allege that Defendants' decision to pursue the consumer action proceedings was based on the fact that CEW was owned and operated by Jews, such as Hassoun.

■■■ Plaintiffs clearly allege the second factor, stating specifically in Count Five that Defendants were "motivated by a religious bias." (Am.Compl.¶ 71.) With regard to the first element, although Plaintiffs have not expressly stated that similarly situated entities and individuals were not prosecuted, drawing all reasonable inferences in Plaintiffs' favor, the Court finds that their allegations suffice to state a § 1983 equal protection claim for selective prosecution. The Amended Complaint is replete with contentions that OCA pursued the civil proceedings despite the fact that the civil complaints rested on unsubstantiated and false allegations. Plaintiffs also allege a temporal nexus between inquiries into the religion of CEW's proprietors and the initiation of the consumer fraud proceedings. Moreover, Plaintiffs allege that OCA knowingly or

---

**18.** *See Sameric Corp.,* 142 F.3d at 590 n. 7 (deeming acts of Philadelphia's Historical Commission to be official policies of the City itself).

**19.** In *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), cited by Defendants, the Supreme Court recognized that "the conscious exercise of some selectivi-

ty in enforcement is not in itself a federal constitutional violation." It made clear, however, that a claim for the denial of equal protection would exist when a party alleged that the selection was based on an "unjustifiable standard such as race, religion, or other arbitrary classification." *Id.*

recklessly sought to "convict" an innocent party. It is reasonable to infer that Plaintiffs contend that similarly situated "innocent" parties were not subject to prosecution.[20]

The Court further finds that both Hassoun and CEW can maintain an equal protection claim, as they both were named as defendants in the OCA complaints. Defendants' contention that a corporation cannot have a "religious" identity does not resolve whether CEW may maintain a claim. In *Gersman v. Group Health Association*, 931 F.2d 1565 (D.C.Cir.1991), *vacated on other grounds*, 502 U.S. 1068, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992), *reinstated*, 975 F.2d 886 (D.C.Cir.1992), the court held that a corporate plaintiff had standing to sue for harm it suffered from discrimination against it because of its officers' religion. "Rather than assume that racial identity is a predicate to discriminatory harm, we might better approach the problem by assuming that, if a corporation can suffer harm from discrimination, it has standing to litigate that harm." *Gersman*, 931 F.2d at 1568. If the corporate entity CEW was harmed by being forced to defend scores of consumer fraud proceedings brought because of anti-Semitic animus toward its shareholders, *Gersman*, and common sense, counsel that it be permitted to assert an equal protection claim.[21]

Plaintiffs may not, however, amend the Complaint to include Defendant Cimmino in Count Five. There are no allegations that Cimmino was involved in the inquiries into CEW and Hassoun or the prosecution of the civil complaints. Indeed, beyond stating that Cimmino is the Director of OCA, the Amended Complaint makes nary a factual reference to Cimmino. It is well settled that a defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir.2000). It is also beyond dispute that § 1983 does not permit the imposition of vicarious liability under a respondent superior theory. *See id.* at 202 (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018). As Plaintiffs have put forth no theory for § 1983 liability against Cimmino beyond an implicit theory of indirect supervisory liability, they may not amend the Complaint on this Count as to Cimmino. Plaintiffs' motion to amend is granted as to all other defendants named in Count Five.

## III. State Law Claims[22]

### A. Count Six: Conspiracy

Plaintiffs allege that the Middlesex defendants conspired among themselves and

---

**20.** To hold otherwise would demand formalistic pleadings, contrary to the liberal notice pleading principles embodied in Federal Rule of Civil Procedure 8(a)(2). As Plaintiffs' claims are lodged against a municipality, a municipal agency, and individual municipal officers in their official capacities, the Amended Complaint is governed by the ordinary notice pleading requirements of Rule 8(a). *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (rejecting heightened pleading standard in § 1983 suit against municipalities and officers in official capacity as inconsistent with the liberal system set forth in the Federal Rules). The Court need not resolve whether the Third Circuit's pre-*Leatherman* heightened § 1983 pleading standard continues to apply to suits against officials in their personal capacity. *See id.* at 166–67, 113 S.Ct. 1160 (leaving unresolved question of whether

"qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials").

**21.** The *Gersman* court further held that an individual shareholder who had also sought to assert a discrimination claim had no standing to bring claims for injuries to the corporation. *Gersman*, 931 F.2d at 1569. Here, by contrast, although Hassoun is a shareholder of CEW, he alleges an injury in his own right, as he was named personally in the consumer fraud proceedings.

**22.** Plaintiffs' malicious use of process claim was asserted in the original Complaint and reasserted in the Amended Complaint. The Amended Complaint also adds state law claims for conspiracy and intentional infliction of emotional distress against all of the Middlesex and Plainsboro defendants. In op-

with the Plainsboro defendants to harm Plaintiffs. Defendants argue that Plaintiffs' conspiracy allegations are made in bad faith and, therefore, should not be permitted. Specifically, Defendants contend that Plaintiffs seek improperly to hold the Middlesex defendants responsible for the actions of the New Jersey Division of Consumer Affairs, the state agency that began investigating Plaintiffs subsequent to OCA's inquiries.[23]

 In support of this argument, Defendants seize upon the erroneous statutory citation regarding the OCA in the Amended Complaint. As explained in note 4, *supra*, Plaintiffs' opposition brief cites the correct statute, which leads the Court to conclude that any reference in the pleadings to the state agency's promulgating statute was an inadvertent error. Furthermore, Plaintiffs' counsel has represented that Plaintiffs' allegations concern only the OCA consumer fraud litigation, and not any proceedings brought by the State of New Jersey. In light of counsel's statements, the Court is unwilling to find that the proposed amendment is in bad faith. Count Six shall be permitted.[24]

### B. Count Seven: Malicious Use of Process

 Plaintiffs charge defendants Cimmino, Lotrowski, and OCA each with malicious use of process under New Jersey law.[25] Plaintiffs state that the Middlesex defendants "falsely, maliciously, without probable cause, and with the intent of injuring Hassoun and CEW's good name and reputation and of bringing Hassoun and CEW into public disgrace, pursued the consumer fraud actions against Hassoun and CEW." (Am.Compl.¶ 80.) Malicious use of process is a disfavored cause of action. *Penwag Property Co. v. Landau*, 76 N.J. 595, 597, 388 A.2d 1265 (1978). To state a malicious use of process claim, Plaintiffs must allege "that the original suit (1) was instituted without reasonable or probable cause; (2) was motivated by malice; (3) terminated favorably to [Plaintiffs in this action]; and (4) resulted in a 'special grievance' to the plaintiff." *Giri v. Rutgers Cas. Ins. Co.*, 273 N.J.Super. 340, 347, 641 A.2d 1112 (App.Div.1994). "The absence of any one of these elements is fatal." *Brien v. Lomazow*, 227 N.J.Super. 288, 300, 547 A.2d 318 (App.Div.1988).

---

posing Plaintiffs' request to amend, the Middlesex defendants have not asserted any immunity defenses to the new state tort claims.

**23.** The Eleventh Amendment bars federal court suits against unconsenting states or their agencies. *See Oliva*, 226 F.3d at 201.

**24.** Defendants also advance their bad faith argument by parsing the contentions contained in the affidavit of Plaintiff Hassoun, appended to the Amended Complaint as Exhibit H. Ordinarily, the statements in Hassoun's affidavit would not be before the Court in considering Defendants' opposition to the motion to amend. Although a "copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," Fed.R.Civ.P. 10(c), the Third Circuit has made clear that appended affidavits do not qualify as "written instruments" for Rule 10(c) purposes, and are instead outside of the pleadings. *See Rose v. Bartle*, 871 F.2d 331, 339 n. 3 (3d Cir.1989). Thus, although Hassoun's affidavit and that of Ohad Tabari are physically affixed to the Amended Complaint, they remain matters outside of the pleadings. *See*

Fed.R.Civ.P. 12(b) and (c); *see also Pharmaceutical Sales Consulting Corp. v. J.W.S. Delavau Co.*, 106 F.Supp.2d 761, 765 (D.N.J.2000) (making determination as to amendment's futility exclusively on the pleadings). Defendants have pointed to no authority directing this Court to look beyond the pleadings in considering a bad faith argument in opposition to a motion to amend. In any event, in light of Plaintiffs' counsel's attestation, the Court rejects Defendants' argument that Count Six was alleged in bad faith. Should Defendants continue to believe, following this Opinion, that Plaintiffs' allegations relate to State proceedings, they may bring an appropriate motion.

**25.** The Amended Complaint actually alleges "malicious prosecution." As noted above, under New Jersey law, when the prior action is a civil matter, as is the case here, the tort is "malicious use of process." The term "malicious prosecution" is reserved for prior criminal actions. *See LoBiondo v. Schwartz*, 323 N.J.Super. 391, 423 n. 12, 733 A.2d 516 (1999).

As to the first component, Defendants contend that because OCA had received complaints from consumers, the municipal court proceedings to resolve those complaints were supported by reasonable or probable cause. Plaintiffs allege, however, that the Middlesex defendants failed to investigate the consumer fraud complaints, that they instituted the actions despite the absence of any substantiation, and that they continued to pursue the actions once it became clear that the complaints were baseless. If Plaintiffs are able to prove their allegations, they will satisfy the first requirement of this tort.

Plaintiffs' allegation that Defendants acted falsely and maliciously states the second element. Plaintiffs have also alleged—albeit in a somewhat convoluted manner—that the proceedings were resolved "adverse to OCA and in favor of Hassoun and CEW," thus stating the third element. (Am.Compl.¶ 34.)

■■■ Whether Plaintiffs have alleged the fourth element—that Plaintiffs suffered a "special grievance"—gives the Court pause. A special grievance stands beyond the ordinary costs associated with litigation, and consists of "interference with one's liberty or property." *Penwag*, 76 N.J. at 598, 388 A.2d 1265; *see also Giri*, 273 N.J.Super. at 349, 641 A.2d 1112. New Jersey courts "interpret 'liberty' as including the entire bundle of freedoms afforded by the Constitution...." *LoBiondo v. Schwartz*, 323 N.J.Super. 391, 424, 733 A.2d 516 (App.Div.1999). Examples of cognizable special grievances include "the filing of a bankruptcy petition, granting an injunction, filing a lis pendens or wrongful interference with the possession or enjoyment of property." *Klesh v. Coddington*, 295 N.J.Super. 51, 63, 684 A.2d 530 (Law Div.1996).

■■ Although "[s]pecial grievance is an elusive concept," *LoBiondo*, 323 N.J.Super. at 423, 733 A.2d 516, it is clear that attorney's fees and costs in defending the prior action do not constitute a special grievance to support a malicious use of process cause of action. *Penwag*, 76 N.J. at 598, 388 A.2d 1265. Also insufficient are allegations of mental anguish or emotional distress arising from the prior complaints, or statements alleging a loss of reputation, "which could flow from the mere filing of any complaint." *Brien*, 227 N.J.Super. at 304, 547 A.2d 318. Defendants contend that Plaintiffs have failed to allege a sufficient special grievance to survive a Rule 12(c) motion. This Court agrees.

In the Amended Complaint, Plaintiffs allege precisely the type of injury that New Jersey courts have declared is *not* a special grievance: that as a result of the allegedly malicious consumer fraud proceedings, "great publicity was caused to be generated by these defendants which resulted in the loss or diminution by [ ] Hassoun and CEW of [their] good name[s], reputation[s], and general standing, and in addition thereto, Hassoun and CEW were required to expend large and considerable sums of money in defending these charges...." (Am.Compl.¶ 81.) In their brief in opposition to Defendants' motion, Plaintiffs invoke *LoBiondo*'s "bundle of freedoms" language, contending vaguely that the constitutional violations they alleged—presumably, violations of substantive due process and religious discrimination—constitute special grievances. In contrast, at oral argument, Plaintiffs' counsel contended that the special grievance alleged was the harm to Plaintiff's ability to conduct business.[26]

---

26. The Court notes that the Plainsboro defendants and the alleged search of a CEW store by OCA inspectors are not implicated in this claim. Thus, any ostensible interference with CEW business from that alleged incident cannot support a finding that Plaintiffs have stated a special grievance. Moreover, to the extent that Plaintiffs' ability to conduct business was harmed as a result of any reputational injury stemming from the consumer fraud proceedings, the New Jersey case law discussed above appears to have foreclosed that as a special grievance.

As an initial matter, this Court has already held that Plaintiffs cannot allege a substantive due process right to be free from baseless litigation and that ethereal "business opportunities" are not entitled to substantive due process protection. Moreover, it is unlikely that the "ability to conduct business" is a cognizable special grievance, and, to the extent religious discrimination would suffice, it is not alleged as a special grievance in the Amended Complaint.[27] Curiously, in moving to amend following Defendants' 12(c) motions, Plaintiffs did not set forth these or any other special grievance, despite Defendants' challenge to the sufficiency of their special grievance allegations. As Plaintiffs have not alleged a sufficient special grievance, they have failed to state a claim for malicious use of process under New Jersey law. Defendants are entitled to judgment on Count Seven.

## C. *Count Nine: Intentional Infliction of Emotional Distress*

■■■■■ Hassoun alleges that all Defendants are liable for intentional infliction of emotional distress. To state a claim under New Jersey law for intentional infliction of emotional distress, he must demonstrate that Defendants acted intentionally or recklessly to cause him distress and that their conduct was "extreme and outrageous," that is, " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366, 544 A.2d 857 (1988)

(quoting comments to Restatement (Second) of Torts § 46). Hassoun must also allege that Defendants' intentional, extreme, and outrageous conduct was the proximate cause of his distress and that the distress was "so severe that no reasonable person could be expected to endure it." *Id.* at 366–67, 544 A.2d 857.

The disturbing allegations in the Amended Complaint concerning the interaction between a CEW employee and the Plainsboro police—the only allegations that might support an intentional infliction of emotional distress claim—do not involve Hassoun. Hassoun's only contention is that the Middlesex defendants instituted civil actions against him and CEW solely because of his and other CEW employees' religion. Although Defendants' alleged conduct is improper, it is unlikely that if proven, such actions would rise to the requisite level of outrageousness. *Cf., e.g., Subbe–Hirt v. Baccigalupi*, 94 F.3d 111, 113–15 (3d Cir.1996) (reviewing litany of facts to support finding of outrageous behavior); *McConnell v. State Farm Mut. Ins. Co.*, 61 F.Supp.2d 356, 363 (D.N.J. 1999) ("Examples of conduct found to be extreme and outrageous by New Jersey courts include, when a physician, knowing it to be false, told parents their son was suffering from cancer; 'spreading a false rumor that plaintiff's son had hung himself; bringing a mob to plaintiff's door with a threat to lynch him if he did not leave town; and wrapping up a gory dead rat inside a loaf of bread for a sensitive person to open.' ") (quoting *Hume v. Bayer*, 178 N.J.Super. 310, 315, 428 A.2d 966 (1981)).[28]

27. In light of the myriad proffered special grievances, it would be unreasonable for the Court to infer otherwise.

28. The Court recognizes that in *Taylor v. Metzger*, 152 N.J. 490, 507–08, 519–20, 706 A.2d 685 (1998), the New Jersey Supreme Court held that evidence of the utterance of a single, severe, racial slur by an employer was sufficient to survive summary judgment on an intentional infliction of emotional distress claim. That situation is distinct from the

present case in at least two ways. First, *Taylor* concerned the unique environment and pressures of the employment setting. *See id.* at 511–13, 706 A.2d 685. Second, and more significantly, the plaintiff in *Taylor* had alleged (and put forth evidence on summary judgment) that she suffered from post-traumatic stress disorder, underwent regular psychotherapy, and suffered from mood swings, insomnia, and nightmares—all stemming from the remark. *See id.* at 514, 706 A.2d 685. Here, by contrast, Hassoun has not put

In any event, even were this Court to find that instituting consumer fraud lawsuits for discriminatory motives were sufficiently extreme and outrageous, Hassoun has not alleged that he suffered severe emotional distress. In *Buckley*, the plaintiff's "complaints amount[ed] to nothing more than aggravation, embarrassment, an unspecified number of headaches, and loss of sleep." *Buckley*, 111 N.J. at 368, 544 A.2d 857. The New Jersey Supreme Court found such allegations insufficient as a matter of law. Similarly, in *Mardini v. Viking Freight, Inc.*, 92 F.Supp.2d 378 (D.N.J.1999), the plaintiff alleged that as a direct result of the defendants' allegedly outrageous acts, she "became physically distraught and sustained a shock to her nervous system and suffered severe emotional distress." *Id.* at 384–85. The *Mardini* court granted the defendants' motion to dismiss, noting that the plaintiff had "not alleged that she had to seek medical assistance, or that any specific ailments afflicted her." *Id.* at 385.

Here, Hassoun's allegations do not rise to the level of *Buckley*, or even *Mardini*. Simply stating that Defendants "intentionally and maliciously inflicted or caused to be inflicted emotional distress upon" Hassoun, and that Hassoun "has suffered and will continue to suffer damages," does not allege the symptoms of severe emotional distress. Accepting all of the allegations in the Amended Complaint as true, Hassoun has not stated a claim upon which relief may be granted—against either the Middlesex or Plainsboro defendants. Plaintiffs' request to amend the Complaint to include Count Nine against the Middlesex defendants is denied.

## IV. *Punitive Damages*

█ Plaintiffs entitle Count Three and Count Eight as "causes of action" for "pu-

nitive damages." Punitive damages are a remedy incidental to cause of action, not a substantive cause of action in and of themselves. *See, e.g., Sellers v. School Bd. of City of Manassas*, 960 F.Supp. 1006, 1011–12 (E.D.Va.1997) (noting that compensatory and punitive damages not available under § 1983 if plaintiff does not state violation of substantive right), *aff'd*, 141 F.3d 524 (4th Cir.1998); *California Natural, Inc. v. Nestle Holdings, Inc.*, 631 F.Supp. 465, 474 (D.N.J.1986) (noting that New Jersey law contains no independent cause of action for punitive damages); *see also* N.J. Stat. Ann. § 2A:15–5.13(c) (stating that punitive damages may be awarded under New Jersey law only if compensatory damages have been awarded). As Counts Three and Eight do not state a cause of action, defendants are entitled to judgment on those claims.[29]

## V. *Plainsboro Defendants*

Plaintiffs' proposed supplements to the Complaint with regard to the Plainsboro defendants satisfy the standards of Rule 15(d), as they relate in part to Plaintiffs' original allegations. *See Griffin v. County Sch. Bd. of Prince Edward County*, 377 U.S. 218, 226–27, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964) (approving supplemental pleading alleging new incidents involving new parties because they stemmed from original causes of action). Nothing before the Court suggests that these supplements were put forth in bad faith, with undue delay, or in a manner that would prejudice any party. Plaintiffs' motion to "amend" the Complaint to include the Plainsboro defendants is therefore granted.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion to amend is granted in part

---

forth a single allegation that, if proven, would demonstrate that he suffered severe emotional distress.

**29.** Plaintiffs have properly requested punitive damages in connection with the substantive

claims that remain in this action. Thus, punitive damages may be available to Plaintiffs if they prevail on those claims and satisfy the standard for an award of such damages.

and denied in part and Defendants' motion for judgment on the pleadings is granted on those claims asserted in the original Complaint and reasserted in the Amended Complaint. Defendants are entitled to judgment on Counts One, Two, Three, Seven, and Eight of the Amended Complaint. Judgment on Counts One and Two is with prejudice.

Plaintiffs' motion to Amend the Complaint is granted as to Counts Four and Six. Plaintiffs' motion is granted as to Count Five except as to Defendant Cimmino and granted as to Count Nine only against the Plainsboro defendants. Plaintiffs' motion to add Count Nine against the Middlesex defendants is denied.